**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**ALICE ALTIERI,**

                              **Plaintiff,**

                    v.                          1:05-CV-126
                                                         (FJS/DRH)

**ALBANY PUBLIC LIBRARY; JEFFREY CANNELL,**
**individually and in his individual official capacity;**
**TIMOTHY BURKE, individually and in his individual**
**official capacity; MARY COON, individually and in her**
**individual official capacity; and PATRICE HOLLMAN,**
**individually and in her individual official capacity,**

                              **Defendants.**

---

**APPEARANCES**                                      **OF COUNSEL**

**ALICE ALTIERI**
Menands, New York 12204
Plantiff *pro se*

**NIXON PEABODY LLP**                      **JOHN E. HIGGINS, ESQ.**
Omni Plaza, Suite 900                      **VINCENT E. POLSINELLI, ESQ.**
30 South Pearl Street
Albany, New York 12207
Attorneys for Defendants

**SCULLIN, Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff's complaint asserts against all Defendants (1) Title VII retaliation claims, (2) claims pursuant to New York Executive Law § 296(1)(e), and (3) claims pursuant to New York

Executive Law § 296(6).[1] Currently before the Court is Defendants' motion to dismiss Plaintiff's complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## II. BACKGROUND[2]

Defendant Albany Public Library ("APL") has employed Plaintiff as a library clerk since February 1991. *See* Dkt. No. 1 at 3. Sometime during or before January 2003, Plaintiff testified and participated in a New York Division of Human Rights ("DHR") investigation into a complaint that Deborah Miles had filed against Defendant APL. *See id.* In November 2003, Plaintiff's supervisor, Defendant Coon, gave her a negative work evaluation, changed her work hours,[3] and gave her a quantifiable work quota, making her the only employee in her department with such a quota. *See id.* In writing her evaluation, Defendant Coon relied upon the assessment of Defendant Hollman, who had been Plaintiff's temporary supervisor before Defendant Coon became her supervisor in September 2003. *See id.* Plaintiff had never before received a negative evaluation. *See id.* at 3, 5.

In December 2003, Defendant Coon told Bette D'Alessandro and Linda Ruff that Defendant Cannell had told her to tell them that, if Plaintiff won her grievance challenging her

---

[1] The Court will refer to Plaintiff's § 296(1)(e) and § 296(6) claims collectively as her "Human Rights Law claims."

[2] Given the procedural posture of this case, the Court assumes that the allegations in Plaintiff's complaint are true.

[3] Although Plaintiff alleges that she went from working four to five days per week and from starting at 7 a.m. to 9 a.m., she does not allege that her total number of work hours changed.

change in work hours, the work hours of all departmental employees would be changed. *See id.* at 4.

In January 2004, Defendant Burke told Plaintiff that her work quota would continue to rise as she became more proficient. *See id.* On June 23, 2004, Plaintiff was involuntarily transferred to another department. *See id.* at 5.

In February 2004, Plaintiff filed a complaint with the DHR. *See id.* at 3. During the investigation of this complaint, Defendant Hollman, who was President of the AFSCME Local 3933, gave a false deposition. *See id.* Defendant Hollman and Defendant Coon, who was Vice-President of the union local, prevented Plaintiff from speaking directly with the union's executive board. *See id.* at 4.

In March 2004, Defendant APL held two meetings to address employee morale. *See id.* at 5. Although other employees also gave honest feedback, Plaintiff was the only employee to receive a counseling memo. *See id.*

### III. DISCUSSION

**A.     Defendants' Rule 12(b)(1) motion**

"A court may dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) when it lacks the statutory or constitutional power to adjudicate the case." *Brown v. Am. Legion Cortland City Post 489*, 64 F. Supp. 2d 96, 99 (N.D.N.Y. 1999).

New York's Human Rights Law provides, in pertinent part, that

> [a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages . . . unless such person had filed a complaint hereunder or

-3-

> with any local commission on human rights, or with the superintendent pursuant to the provisions of section two hundred ninety-six-a of the this chapter, provided, where the division has dismissed such complaint on the grounds of administrative inconvenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, such person shall maintain all rights to suit as if no complaint had been filed with the division. . . .

*See* N.Y. Exec. Law § 297(9) (McKinney 2005). Therefore, a plaintiff must elect between seeking judicial relief and pursuing an administrative remedy before the New York State Division of Human Rights. "Federal courts . . . must strictly adhere to New York's election of remedies scheme. . . . Thus [they] may not adjudicate a claim of unlawful discriminatory practice under section 296 which has already been filed with the state DHR unless the DHR dismissed the claim for administrative convenience." *DeWald v. Amsterdam Hous. Auth.*, 823 F. Supp. 94, 99 (N.D.N.Y. 1993) (citation and internal citation omitted).

On February 19, 2004, Plaintiff filed a verified complaint with the DHR alleging that Defendant APL violated the Human Rights Law, most recently on January 10, 2004, by discriminating against her "because of Age and Opposing Discrimination." *See* Affidavit of John E. Higgins, sworn to February 28, 2005, at "A" at 1. On August 30, 2004, the DHR dismissed this compliant upon a finding of "NO PROBABLE CAUSE." *See id.* at "B" at 1-2.

On July 2, 2004, Plaintiff filed a second verified complaint with the DHR alleging that Defendant APL violated the Human Rights Law, most recently on June 7, 2004, "because of Age, Disability, and Opposing Discrimination." *See id.* at "C" at 1. On September 8, 2004, the DHR dismissed this complaint upon a finding of "NO PROBABLE CAUSE." *See id.* at "D" at 1-2.

The only allegation that Plaintiff makes in her complaint that Defendants engaged in any

conduct after July 2, 2004, is her assertion that "[u]ntil the final NYS DHR hearing in August 2004, Ms. Hollman did not claim to have spoken with me during her supervision[.]  At this time she lied and newly claimed to have spoken with me 'several times'."  *See* Dkt. No. 1 at 4.  Thus, it appears that all of Plaintiff's allegations of Defendants' discriminatory conduct were before the DHR for its consideration.  Therefore, Plaintiff has elected to present her claims to the DHR and may not re-litigate her claims in federal court.  Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's complaint with respect to her Human Rights Law claims for lack of subject-matter jurisdiction.

**B.    Defendants' Rule 12(b)(6) motion**

*1. Standard of review*

In considering a motion to dismiss for failure to state a claim, a court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party.  *See Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999).  Hence, dismissal is appropriate only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994) (quotation omitted).

*2. Plaintiff's Title VII retaliation claims against the individual Defendants*

"'[I]ndividuals are not subject to liability under Title VII.'"  *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) (quotation and other citation omitted).  Moreover, in *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998), the Second Circuit overruled

*Bridges v. Eastman Kodak Co.*, 800 F. Supp. 1172 (S.D.N.Y. 1992), the case upon which Plaintiff relies for the proposition that supervisors may be held personally liable. Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's Title VII retaliation claims against the individual Defendants.

### *3. Plaintiff's Title VII retaliation claims against Defendant APL*

"In order to 'establish a *prima facie* case of retaliation, an employee must show "[1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action."'" *Feingold v. N.Y.*, 366 F.3d 138, 156 (2d Cir. 2004) (quotation omitted). Defendants concede, for the purposes of this motion only, that Plaintiff has satisfied the first element. *See* Defendants' Memorandum of Law at 10. However, they contend that Plaintiff has not alleged that she suffered an adverse employment action or that there is a causal connection between her protected activity and an adverse employment action. *See id.*

"[A] plaintiff may suffer an 'adverse employment action' if she endures a 'materially adverse change in the terms and conditions of employment.'" *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir. 1999) (quotation omitted). "To be '"materially adverse," a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Weeks v. N.Y. State (Div. of Parole)*, 273 F.3d 76, 85 (2d Cir. 2001) (quotation omitted), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 108-15 (2002). "Such a change 'might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a

material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" *Id.* (quotation omitted)

Plaintiff alleges that in November 2003 and on April 1, 2004, Defendant Coon gave her "completely negative evaluation[s]." *See* Dkt. No. 1 at 3-4. She asserts that in November 2003, Defendant Coon assigned her "a completely unattainable work quota and had [her] work hours changed from a 4 day week starting at 7 am to a 5 day week starting at 9 am, ostensibly to supervise [her] work more closely." *See id.* at 3. She further alleges that she was the only "department employee with an assigned quantifiable work quota" or "whose work was scrutinized subjecting [her] to constant pressure to achieve what was later documented as an unattainable, not just an unreasonable[,] work quota." *See id.* She further asserts that she received a counseling memo after providing honest feedback at two employee meetings in March 2004, that were held to address morale problems. *See id.* at 5. Finally, she alleges that she was involuntarily transferred on June 23, 2004, to a different department. *See id.*

A negative job evaluation is not itself an adverse employment action. *See Rivera v. Potter*, No. 03 Civ. 1991, 2005 WL 236490, *6 (S.D.N.Y. Jan. 31, 2005) (citations omitted); *Boyd v. Presbyterian Hosp. in City of N.Y.*, 160 F. Supp. 2d 522, 537 (S.D.N.Y. 2001) ("'Negative evaluations alone, without any accompanying adverse consequence are not adverse employment action.'" (quotation and other citation omitted)); *Castro v N.Y. City Bd. of Educ. Pers.*, No. 96 Civ. 6314, 1998 WL 108004, *7 (S.D.N.Y. Mar. 12, 1998) ("[N]egative evaluations . . . that are unattended by a demotion, diminution of wages, or other tangible loss do not materially alter employment conditions." (citations omitted)). The only adverse consequences of the negative job evaluations or counseling memo that Plaintiff has identified are

-7-

that her "reputation as a longstanding conscientious, efficient employee has been irreparably damaged[,]" and that she has "suffered extreme mental anguish, humiliation, embarrassment[,] insomnia and anxiety causing both my physical and mental health to suffer." *See* Dkt. No. 1 at 5. These are not tangible losses that would permit the Court to consider Plaintiff's negative job evaluations as adverse employment actions.

Moreover, none of Plaintiff's allegations about changed work hours, an unattainable work quota, close supervision of her work, and an involuntary transfer to a different department[4] rise to the level of an adverse employment action. Plaintiff has not alleged that any of these actions resulted in a loss of pay or opportunity for advancement. Nor has she alleged that any of these action resulted in a reduction of her job responsibilities. Although other types of tangible loss might lead to a conclusion that an employee has suffered an adverse employment action, Plaintiff has failed to identify any such loss.

Accordingly, since Plaintiff has not alleged that she suffered an adverse employment action, the Court grants Defendants' motion to dismiss Plaintiff's Title VII retaliation claim against Defendant APL.[5]

## IV. CONCLUSION

After carefully considering the file in this matter, the parties' submissions, and the

---

[4] Although there are indications in the record that Plaintiff is unable to perform the job to which Defendants transferred her, she made no allegations to that effect in her complaint.

[5] Since the Court finds that Plaintiff has not alleged that she suffered an adverse employment action, it will not consider whether she has alleged a causal connection between her protected activity and an adverse employment action.

applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendants' motion to dismiss Plaintiff's Human Rights Law claims for lack of subject-matter jurisdiction is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiff's Title VII retaliation claims for failure to state a claim is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**

Dated: June 8, 2005
       Syracuse, New York

                                        _____
                                        Frederick J. Scullin, Jr.
                                        Chief United States District Court Judge